IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROBERT CAMPBELL, RONTEZ JAMES, LARRY JOHNSON, ADRIAN TRAMMER, BILLY BANKS** and **NOBLE WHITE,**

**LEAD CASE**

Plaintiffs,

v.

No. CIV 00-1147 MV/DJS

**CORRECTIONS CORPORATION OF AMERICA, a Delaware corporation, BOARD OF COUNTY COMMISSIONERS OF TORRANCE COUNTY, TORRANCE COUNTY SHERIFF, TORRANCE COUNTY SHERIFF'S DEPARTMENT,** and **ROBERT J. PERRY, for equitable relief as New Mexico Secretary of Corrections.**

Defendants.

**~ CONSOLIDATED WITH ~**

**ROBERT CAMPBELL, RONTEZ JAMES, LARRY JOHNSON, ADRIAN TRAMMER, BILLY BANKS** and **NOBLE WHITE,**

Plaintiffs,

v.

No. CIV 00-1286 MV/DJS

**STATE OF NEW MEXICO.**

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on the defendants' two motions to dismiss. The Court, having considered the motions, briefs, relevant law, and being otherwise fully informed,

finds that the motion to dismiss of the State of New Mexico **[Doc. No. 10]** will be **DENIED**, and that the motion to dismiss of Corrections Corporation of America, the Board of County Commissioners of Torrance County, the Torrance County Sheriff, the Torrance County Sheriff's Department, and Robert J. Perry **[Doc. No. 15]** will be **GRANTED IN PART** and **DENIED IN PART**, as explained below.

**BACKGROUND**

For the purpose of deciding the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b), the Court assumes the truth of the following facts as pleaded in plaintiffs' two complaints.

Plaintiffs are six prisoners currently incarcerated by the State of New Mexico. They are all African American. There is a "history of race-based tension between the African-American and Hispanic inmates" in New Mexico's jails and prisons.

On August 13, 1998, plaintiffs were all incarcerated at the Torrance County Detention Center in Estancia, New Mexico. While playing basketball during indoor recreation at the jail's gym that evening, plaintiffs were brutally assaulted by Hispanic inmates. "Defendants or their agents, officials or employees" knew that this assault was planned for that evening, but failed to take adequate security precautions. While defendants allowed "an unusually large number of Hispanic inmates" to attend indoor recreation that evening, they locked down Hispanic inmates "known to be able to act as peace-makers between the racial groups." Although defendants knew that knives were missing from the jail's kitchen, they failed to search for them or take other responsive measures. They did not adequately pat down inmates arriving at the gym for knives and shanks.

Because guards who knew about the planned assault failed to report to work or called in sick, and because defendants did not respond properly to the resulting inadequate staffing, the only guard assigned to the gym that evening was "a young and unseasoned 19-year-old." When the assault began, this guard fled the gym and locked the door behind him. He did not sound an alarm, request back-up, or make any other efforts to protect plaintiffs. Plaintiffs Banks and Trammer were able to slip out the door before it was closed and were tackled by correctional officers. Plaintiffs Campbell, White, Johnson, and James were trapped inside the gym and "grossly outnumbered by armed Hispanic inmates" for approximately 15 to 20 minutes. They sustained severe beating and stab wounds. Once guards finally opened the door, Campbell ran out in terror and crashed into a wall. James ran out and was slammed into a wall by guards. While several of the plaintiffs were transported to a hospital for emergency treatment of stab wounds, they did not receive treatment at the jail prior to transport.

The inmates who assaulted the plaintiffs were not disciplined or charged with crimes. After the assault, Banks was placed in the same housing pod with inmates who had initiated the assault in the gym; his requests to be moved were denied; a few days later he was beaten and stabbed multiple times by those inmates; despite Bank's requests, no doctor treated his wounds at the jail.

Plaintiffs filed two complaints. They filed one complaint against Corrections Corporation of America ("CCA"), a private corporation; the Board of County Commissioners of Torrance County ("the Board"); the Torrance County Sheriff; the Torrance County Sheriff's Department; and Robert J. Perry, the New Mexico Secretary of Corrections, in federal court on August 7, 2000. Plaintiffs' second complaint, against the State of New Mexico, was filed in New Mexico

state court on August 9, 2000, and removed to federal court on September 7, 2000. On September 28, 2000, pursuant to the parties' joint motion, the court consolidated the two actions for all purposes **[Doc. No. 6]**.

On September 21, 2000, the State of New Mexico moved to dismiss the removed action **[Doc. No. 10]**. On October 6, 2000, the other defendants moved to dismiss the action originally filed in federal court **[Doc. No. 15]**.

**STANDARD OF REVIEW**

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that would entitle him or her to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989) (citation omitted). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts and construe them in favor of the plaintiff. *Housing Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991) (citations omitted). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [it] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th

Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

### I. PLAINTIFFS' CLAIMS AGAINST THE SHERIFF OF TORRANCE COUNTY AND THE TORRANCE COUNTY SHERIFF'S DEPARTMENT

Plaintiffs state their willingness to dismiss the Torrance County Sheriff and the Torrance County Sheriff's Department. *Plaintiffs' Response to the Other Defendants' Motion to Dismiss*, at 2. Without addressing plaintiffs' assertion that "the County is otherwise adequately named in the caption," *id.*, or defendants' contention that the sheriff's department is not "a separate suable entity" apart from the county, *Memorandum in Support of Defendants' Motion to Dismiss*, at 2-3, the Court will treat these defendants as voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

### II. PLAINTIFFS' CLAIMS AGAINST CORRECTIONS CORPORATION OF AMERICA

Plaintiffs allege that defendant CCA is "a private Delaware corporation doing business in New Mexico and carrying out government functions in New Mexico, including the operation of the Torrance County Detention Center." In arguing for CCA's dismissal, defendants state:

> Plaintiffs allege inmates assaulted them in the gym. Complaint, paragraphs 11 and 12. Plaintiffs do not allege that CCA had personal involvement in the assault on plaintiffs. CCA is not a person and cannot have personal involvement. Because CCA can only act through its employees and because plaintiffs' claim against CCA may not be based solely on a theory of respondeat superior liability for the actions of CCA employees, plaintiff's [*sic*] claim against CCA must be dismissed.

*Memorandum in Support of Defendants' Motion to Dismiss*, at 5. This reasoning is defective in several respects.

First, the primary constitutional claim asserted by the plaintiffs is a "failure to protect"

claim under the Eighth and Fourteenth Amendments. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court made clear that jail and prison officials have a constitutional duty to respond reasonably when they have actual knowledge that inmates are exposed to a substantial risk of serious harm, such as the risk of inmate-on-inmate violence. Thus, it is inconsequential to this claim whether CCA or any other defendant took part in the assault on plaintiffs in the gym; what matters is whether CCA acted with deliberate indifference to the substantial risk of serious harm that plaintiffs faced prior to and on August 13, 1998.

Second, by arguing that (1) it is not a "person" that can have "personal involvement" and (2) that it is not responsible for the acts of its employees, CCA effectively claims broad corporate immunity under 42 U.S.C. § 1983. Its arguments are unavailing. It is well established that private corporations are "persons" subject to suit under § 1983. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936-37 (1982); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). As defendants elsewhere acknowledge, a corporation acting under color of state law may be held liable under § 1983 when an official policy, custom or action causes a deprivation of federal rights. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir.1993); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990); *cf. Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 694 (1978). Applying this standard, it does not appear beyond doubt that plaintiffs can prove no set of facts supporting its § 1983 claims. The complaint can be reasonably interpreted as alleging that CCA, along with the other defendants, established inadequate supervision, staffing, weapon control, search, segregation, violence prevention, riot response,

discipline, and medical care policies and/or customs at the jail, which led to the deprivation of plaintiffs' constitutional rights.

Defendants challenge the complaint on the ground that it does not specify particular facts, such as how CCA gained actual knowledge of a substantial risk of serious harm.[1] Such details, however, are unnecessary at the pleading stage. Federal Rule of Civil Procedure 8(a)(2) directs plaintiffs to submit only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has rejected the argument that plaintiffs must provide detailed pleadings in § 1983 actions against municipal entities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). Just this month, the Tenth Circuit ruled that its heightened pleading standard for actions involving the defense of qualified immunity did not survive the Supreme Court's decision in *Crawford-El v. Britton*, 523 U.S. 574 (1998). *See Currier v. Doran*, ___ F.3d ___, 2001 WL 202045, at *9 (10th Cir. Mar. 1, 2001).

Defendants also challenge the complaint on the ground that plaintiffs have pleaded certain facts "upon information and belief." "This language is important," defendants argue, "because it makes glaringly obvious that plaintiffs do not have factual information related to CCA's actual subjective knowledge of a substantial risk of serious harm to plaintiffs." *Memorandum in Support of Defendants' Motion to Dismiss*, at 11. This argument is unfounded. Federal Rule of Civil Procedure 11(b) allows parties to make allegations that "have evidentiary support, *or if*

---

[1] For example: "Plaintiffs do not describe when a CCA employee allegedly gained knowledge regarding the possibility of an incident, the possibility of a missing knife, or the possibility of an impending staffing issue. Plaintiffs do not describe the alleged racial tensions, do not describe how a CCA employee may have been put on notice or how CCA may have responded to such notice." *Memorandum in Support of Defendants' Motion to Dismiss*, at 5.

*specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery*" (emphasis added). There is no basis under the Federal Rules for the Court to conclude that plaintiffs will not be able to establish the defendants' deliberate indifference after conducting discovery, or to interpret plaintiffs' allegations as establishing only "an ordinary lack of due care."

Needless to say, allegations do not constitute evidence. At the summary judgment stage and/or at trial, plaintiffs will have to present evidence establishing a causal link between CCA's policies, customs, or actions and the plaintiffs' injuries, as well as the appropriate level of subjective intent for each constitutional violation claimed. However, for purposes of defendants' Rule 12(b)(6) motion, plaintiffs' allegations are sufficient. CCA is not entitled to dismissal.

## III. PLAINTIFFS' CLAIMS AGAINST THE BOARD OF COUNTY COMMISSIONERS OF TORRANCE COUNTY

Although the doctrine of legislative immunity prohibits § 1983 suits against municipal legislators for their legislative acts, a plaintiff may sue the legislative body to which they belong. *See Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404-05 & n.29 (1979); *Scully v. Borough of Hawthorne*, 58 F. Supp.2d 435, 449 n.14 (D.N.J. 1999). Here, plaintiffs have sued the Board, a municipal entity which, plaintiffs allege, is "legally responsible for the operation of the Torrance County Detention Center."

Citing *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404-05 (1997), defendants correctly state that plaintiffs must demonstrate that a policy or custom of this municipal entity was a "moving force" behind the deprivation of their federal rights. However, for the same reasons stated in the preceding section, the Court finds that the plaintiffs' complaint is

sufficient in this regard.[2] While it is true that plaintiffs do not differentiate between CCA and the Board with respect to the safety and security policies at issue, it can be inferred from the complaint that the two entities share overlapping responsibilities in this regard. As the case proceeds, both defendants will be able to challenge plaintiffs' assertion of their responsibility for operations at the jail, as well as their liability for the constitutional violations alleged. Dismissal of the Board at this stage, however, is unwarranted.

**IV. PLAINTIFFS' CLAIMS AGAINST ROBERT J. PERRY**

As the caption of their complaint indicates, plaintiffs sue New Mexico Secretary of Corrections Perry in his official capacity for equitable relief. Plaintiffs reiterated in their response that they sue Perry in this capacity only, and "that no individuals are sued for damages." *Plaintiffs' Response to the Other Defendants' Motion to Dismiss*, at 2. Plaintiffs' claims against Perry for declaratory and injunctive relief are not barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-05 (1984); *Ex Parte Young*, 209 U.S. 123, 160 (1908).

**V. PLAINTIFFS' EIGHTH AMENDMENT CLAIMS**

Defendants argue that plaintiffs' Eighth Amendment failure-to-protect claims must be dismissed because plaintiffs failed to allege that defendants were deliberately indifferent to a substantial risk of serious harm. The Court disagrees. As mentioned above, to establish a defendant's liability for damages under the standard established by the Supreme Court in *Farmer*,

---

[2] In addition to the general allegations discussed above, plaintiffs state in a separate count that "defendants' misconduct constituted or flowed from municipal custom, policy, practice, usage, supervision or training which reflects deliberate indifference to constitutional rights" under the Eighth and Fourteenth Amendments.

an inmate must show that the defendant had actual knowledge of a substantial risk of serious harm before the harm occurred. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted).

Here, plaintiffs allege *inter alia* that defendants knew that plaintiffs would be attacked in the gym, but refused to cancel indoor recreation or take other security precautions; knew that knives were missing from the jail kitchen that day, but failed to search for them or other weapons; and in the face of a "sick-out" by other guards, knowingly allowed indoor recreation to take place with only one "young and unseasoned" guard in charge of supervising two hostile groups of inmates. In addition, although inelegantly presented, the complaint supports an inference that the defendants implemented with deliberate indifference a policy or custom of inadequate staffing and training of guards (*e.g.*, in the areas of inmate supervision, weapon control, search procedures, segregation of dangerous inmates, inmate discipline, violence prevention, and emergency response) and that these inadequacies led to the assaults on the plaintiffs. These allegations are sufficient to state a claim of deliberate indifference under *Farmer*. *See Lopez v. LeMaster*, 172 F.3d 756, 762-64 (10th Cir. 1999) (reversing summary judgment for officials where inmate made sufficient showing that "the county maintains an unconstitutional policy of understaffing its jail and of failing to monitor inmates"); *Berry v. City of Muskogee*, 900 F.2d 1489, 1497-99 (10th Cir. 1990) (jail's deficient contraband control policy, which allowed inmate to fashion murder weapon from wire broom, could support finding of deliberate indifference); *Harris by and through Harris v. Maynard*, 843 F.2d 414, 417 (10th Cir. 1988) (affirming denial of summary

judgment where evidence showed that officials had been warned of inmate's need for protection from other inmates); *see also Northington v. Marin*, 102 F.3d 1564, 1567-68 (10th Cir. 1996) (affirming damages award and attorney's fees against deputy sheriff who encouraged other inmates to assault plaintiff). Dismissal of plaintiffs' failure-to-protect claims is not warranted.

Similarly, the Court declines to dismiss plaintiffs' medical care and excessive force claims. Plaintiffs allege that they received no medical treatment other than oxygen between the time when they were assaulted in the gym until they were transported to a hospital, and that no efforts were made to stop their bleeding. Plaintiffs also allege that Banks's requests for medical care after his assault in the housing pod were ignored until he was transferred to another facility. The Eighth Amendment prohibits the knowing denial or delay of medical treatment to inmates with serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000); *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). If a medical need is urgent, even a short delay can result in extreme pain and amount to deliberate indifference. *See Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987) (delay in treating gunshot wound caused shock and extensive internal bleeding); *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1183 (7th Cir. 1985) (10 to 15-minute delay in responding to inmate with heart attack showed deliberate indifference); *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988) (delay in providing medical treatment to eliminate "pain and suffering at least temporarily" can violate Constitution). With respect to plaintiffs' excessive force claims, plaintiffs allege that guards "tackled" Trammer and Banks as they fled the gym, and that James was "slammed against the wall" once the door was reopened. The key question in an Eighth Amendment excessive force case is whether officials "maliciously and sadistically [used] force to cause harm." *Hudson*

*v. McMillian*, 503 U.S. 1, 9 (1992). Defendants argue that "the correctional officers exhibited a great deal of restraint in light of the incident and the plaintiffs' actions." *Memorandum in Support of Defendants' Motion to Dismiss*, at 5. While the evidence may ultimately support such a finding, the alleged facts, construed in plaintiffs' favor, do not. Again, because plaintiffs do not allege that either CCA or the Board was immediately involved in the alleged denial of medical care or use of excessive force, plaintiffs must ultimately prove that defendants' official policies, customs, or actions caused the deprivation of their constitutional rights. For purposes of defendants' Rule 12(b)(6) motion, however, plaintiffs' complaint is sufficient.

## VI. PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS

Defendants argue that plaintiffs' Fourteenth Amendment claims must be dismissed. They correctly observe that the rubric of substantive due process is inapplicable if other constitutional provisions, such as the Fourth or Eighth Amendment, apply. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *Graham v. Connor*, 490 U.S. 386, 395 (1989). However, it also well established that the Cruel and Unusual Punishments Clause of the Eighth Amendment applies only to inmates who have been duly convicted of a crime. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983). The Due Process Clause of the Fourteenth Amendment applies to unconvicted detainees, providing them with protections "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (citing *Bell v. Wolfish*, 441 U.S., 520 535, n.16 (1979)); *see also Barrie v. Grand County*, 119 F.3d 862, 868 (10th Cir. 1997) (applying same "deliberate indifference" standard for medical care claims by pretrial detainees as for claims by convicted prisoners). Unfortunately, because the complaint does not specify which if any of the plaintiffs had already been convicted at the time of the alleged assault, *see Berry v.*

*City of Muskogee*, 900 F.2d at 1493, the Court is unable to determine whether the Eighth or Fourteenth Amendment applies. Because there is at least a possibility that some of the plaintiffs were pretrial detainees at the time – they were, after all, incarcerated at a county detention center – the Court will deny defendants' motion to dismiss on this ground.

**VII. PLAINTIFFS' FOURTH AMENDMENT CLAIMS**

Defendants contend that plaintiffs' Fourth Amendment claims must be dismissed. The "objective reasonableness" standard of the Fourth Amendment prohibits law enforcement officials from using excessive force in the course of making an arrest, investigatory stop, or other "seizure" of a person. *Graham v. Connor*, 490 U.S. at 388. It is unclear whether the Fourth Amendment standard continues to apply when a person is held in an arresting officer's custody. *Compare Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996), *and Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989), *with Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997) (en banc), *and Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Once the person has been transferred to the custody of a jail or prison, however, it is well established that either the Fourteenth or Eighth Amendment, not the Fourth, provides the governing standard for excessive force claims. *See, e.g.*, *Barrie v. Grand County*, 119 F.3d at 866 (applying "deliberate indifference" standard of Fourteenth Amendment, not "objective reasonableness" standard of Fourth Amendment, to jail suicide claim). Plaintiffs allege that they were in a county detention center, not an arresting officer's custody, at the time of the alleged assault. They do not state any kind of Fourth Amendment claims other than for excessive force. Plaintiffs' Fourth Amendment claims are therefore due to be dismissed.

**VIII. PLAINTIFFS' STATE-LAW CLAIMS**

Finally, the defendants, including the State of New Mexico, move for dismissal of plaintiffs' negligence claims under the New Mexico Tort Claims Act. Under the New Mexico Tort Claims Act, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived. . . ." N.M. Stat. Ann § 41-4-4(A). Here, plaintiffs rely on four waivers of immunity specified by the Act.

First, plaintiffs cite N.M. Stat. Ann. § 41-4-6, which provides that the immunity granted under the Tort Claims Act "does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building." Plaintiffs allege both that the Board is "legally responsible for the operation of the Torrance County Detention Center,"[3] and that the jail is "operated under contract between the State of New Mexico and [CCA]." In *Archibeque v. Moya*, 866 P.2d 344 (N.M. 1993), the New Mexico Supreme Court held that § 41-4-6 did not allow a suit by a prisoner who claimed that he had been negligently misclassified as suitable for placement in the general prison population. 866 P.2d at 347. The court determined that the alleged negligent classification was an "administrative function" unrelated to the operation and maintenance of the prison's physical premises. *Id.* Although the plaintiff had been put at risk, "the negligence did not create an unsafe condition on the prison premises as to the general prison population." *Id.* at 348. *See also id.* at 350 (Ransom, C.J., specially concurring) (stating that "a general condition of unreasonable risk from negligent

[3] The Court finds no basis for defendants' contention that "plaintiffs appear to allege the Board negligently supervised" the jail. A correctional facility may be jointly operated by private and government entities.

security practices" would waive immunity under § 41-4-6). In *Callaway v. New Mexico Dep't of Corrections*, 875 P.2d 393 (N.M. Ct. App. 1994), the court held that an inmate had stated a claim sufficient to waive immunity under § 41-4-6 by alleging that penitentiary officials "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." *Id.* at 399. *See also Garner v. Department of Corrections*, 903 P.2d 858, 861 (N.M. Ct. App. 1995) ("Whereas, in *Archibeque*, the danger was unique to Archibeque and its realization thus a function of Archibeque's classification, in both *Callaway* and this case, there was a generally present danger to members of the prison population at large."). The Court acknowledges that the distinction drawn in these cases is "exceedingly fine." *Baca v. State*, 911 P.2d 1199, 1201 (N.M. Ct. App. 1996). Nevertheless, it is clear that the facts alleged by plaintiffs here involve the kind of "unsafe condition . . . as to the general prison population" found to be actionable in *Callaway* and *Garner*, not the kind of isolated "administrative function" at issue in *Archibeque*. Plaintiffs may therefore proceed with their claims against the Board and the State under § 41-4-6.

Second, plaintiffs cite N.M. Stat. Ann. § 41-4-9, which waives immunity for bodily injury "caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities." The New Mexico courts have not conclusively decided whether medical care provided in a jail or prison falls with the ambit of this statute. Defendants cite *M.D.R. v. State ex rel. Human Servs. Dep't*, 836 P.2d 106 (N.M. Ct. App. 1992), which held that the placement of a child in a foster care home was not a provision of "health care services" for purposes of § 41-4-9.

In that case, however, the court emphasized "the ordinary, everyday meaning" of the phrase "health care services," which relates to attempts to "cure[] or prevent[] impairments of the normal state of the body." *Id.* at 108-09 (quoting *Troyer v. Department of Health & Social Servs.*, 722 P.2d 158, 161 (Wyo. 1986)). That ordinary sense of "health care services" applies here, where plaintiffs challenge the denial of emergency medical treatment following their assault in the gym (and for plaintiff Banks, in his housing pod). In *Silva v. State*, 745 P.2d 380 (N.M. 1987), the New Mexico Supreme Court stated that §§ 41-4-9 and 41-4-10 were "arguably applicable" to a wrongful death claim brought by the personal representatives of an inmate who committed suicide at a Corrections Department facility. *Id.* at 385-86. The Court concludes that plaintiffs may proceed with their claims under § 41-4-9.

The Court also concludes that plaintiffs may proceed under N.M. Stat. Ann. § 41-4-10, which waives immunity for bodily injury "caused by the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services." As with § 41-4-9, defendants contend that plaintiffs "have not and cannot allege facts to show" that the Board or the State "provided health care services to plaintiffs." Under the Tort Claims Act, however, the doctrine of respondeat superior applies. *See* § 41-4-4(D). As the New Mexico Supreme Court has stated: "A governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived. When the act of the employee is the act of the public entity, let the master answer." *Silva*, 745 P.2d at 385 (citation omitted). Here, plaintiffs claim that jail officials acting within the scope of their duties failed to provide them with urgently needed medical treatment. The Board and the State are not immune to such a claim under § 41-4-

10.

Lastly, plaintiffs cite N.M. Stat. Ann. § 41-4-12, which waives immunity for bodily injury "resulting from assault, battery, false imprisonment, false arrest, malicious, prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." Correctional officers and their supervisors at a county jail are "law enforcement officers" for purposes of § 41-4-12. *Methola v. County of Eddy*, 622 P.2d 234, 237 (N.M. 1980); *Davis v. Board of County Comm'rs of Dona Ana County*, 987 P.2d 1172, 1183 (N.M. Ct. App. 1999). Plaintiffs have stated claims for assault and battery by guards at the Torrance County Detention Center, and, as discussed above, they have stated claims for violations of their Eighth and/or Fourteenth Amendment rights. *Cf. McDermitt v. Corrections Corp. of Am.*, 814 P.2d 115, 117 (N.M. Ct. App. 1991) ("In our view the complaint can reasonably be construed as alleging that defendants' negligent training and supervision of their subordinates caused the subordinates to deprive plaintiff's son of rights secured under the United States and New Mexico Constitutions and that the deprivation of rights resulted in personal injury and death to her son.") (citation omitted). Again, defendants challenge the involvement of the Board and the State "in the rendering of law enforcement or correctional services at the Torrance County Detention Center." This is a factual issue that defendants are free to raise in summary judgment proceedings and/or at trial. The allegations in plaintiffs' complaints, however, are sufficient to survive dismissal under Rule 12(b)(6). Plaintiffs may proceed with their claims against the Board and the State under § 41-4-12.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the motion to dismiss of the State of New Mexico **[Doc. No. 10]** is hereby **DENIED**, and that the motion to dismiss of Corrections Corporation of America, the Board of County Commissioners of Torrance County, the Torrance County Sheriff, the Torrance County Sheriff's Department, and Secretary of Corrections Perry **[Doc. No. 15]** is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims against the Torrance County Sheriff and the Torrance County Sheriff's Department are hereby **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(a). Plaintiffs' claims for excessive force under the Fourth Amendment are hereby **DISMISSED WITH PREJUDICE**. All other portions of defendants' motions to dismiss are **DENIED**.

MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiffs
CATES & HAMMEL
Kathryn Hammel

Attorney for Defendants
Tila F. Hoffman